UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:05 CR 70 CDP |
| ) | DDN |
| SCOTT A. WEAKLEY, ) | |
| ) | |
| ) | |
| Defendant. ) | |

**ORDER AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the Court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on September 1, 2005.

Defendant Scott A. Weakley has moved to suppress evidence and statements (Doc. 24).

From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

**FACTS**

1. Before January 6, 2005, Bollinger County, Missouri, Deputy Sheriff Darren Bullard, who was assigned to undercover illicit narcotics investigations, knew of Scott A. Weakley as the subject of narcotics activities. Sgt. Bullard had heard from other law enforcement personnel, confidential informants, and Weakley's ex-wife that Weakley was involved in the manufacture and distribution of methamphetamine. Weakley's ex-wife also said he was then selling marijuana.

2. During the evening of January 6, Bullard was working undercover. In doing so, he went to the mobile home trailer residence of Scott Weakley and knocked. Weakley and Shelly Lemons came to the door. Bullard knew of both Lemons and Weakley from police work. Bullard asked directions to the residence of a certain woman; Bullard planned to purchase marijuana from the woman in his capacity as an

undercover law enforcement officer. Lemons directed Bullard to the woman's residence, a mobile home trailer near the Weakley residence. Bullard conducted his undercover marijuana buy from the woman and then he arrested her. After the arrest, the woman told him that she had purchased marijuana that evening from Weakley, who lived near her. She pointed out Weakley's mobile home residence where she said Weakley kept marijuana. She also said that living with Weakley in the residence are Shelly Lemons and several children.

     3.    After the arrested woman gave Sgt. Bullard this information, he drove her to the Bollinger County Sheriff's office so that he could book her and also apply for a search warrant for Weakley's residence. Bullard notified Prosecuting Attorney Stephen P. Gray about the matter. An affidavit was prepared and submitted by the officer to Associate Circuit Judge Scott Thomsen. In his written, sworn affidavit Sgt. Bullard described his law enforcement experience and his extensive training in the investigation of methamphetamine and marijuana trafficking. The affidavit also stated that within the previous 72 hours he spoke with a confidential informant. He stated the informant was reliable, because the informant had provided him with information that incriminated the informant as well as Weakley and that the informant had seen and bought marijuana from Weakley in Weakley's and Shelly Lemons's residence. The affidavit also described earlier, self-incriminating information from another informant that Weakley is involved in the distribution of marijuana. The affidavit described the Weakley residence:

> The residence is a tan single-wide mobile home with brown trim and a blue Chevy Lumina junk car with the hood up in the front yard. To locate, go the intersection of Highway C, Highway 51 and P Highways in Bollinger County (Arab junction), and proceed 1.0 miles West along P Highway to CR [(County Road)] 720, then turn onto CR720 and proceed .5 mile to a driveway on the left hand side of the road and proceed to the first trailer along the driveway on the right hand side of the driveway. The front door of the trailer faces toward the driveway.

See Gov. Ex. 1. After considering this affidavit, at 10:00 p.m. Judge Thomsen issued his search warrant for the Weakley residence to search for marijuana, firearms and ammunition, and other items evidencing drug

trafficking. The search warrant description of the place to be searched was identical to the description in the affidavit. Id.

4. At approximately 11:00 p.m. on January 6, Sgt. Bullard and other law enforcement officers went to the Weakley residence to execute the search warrant issued by Judge Thomsen. Instead of the Weakley trailer being the first trailer on the right side of the driveway after entering from County Road 720, the Weakley trailer was the second one. Nevertheless, because he was familiar with it, Bullard led the officers to the correct location. All went to the front door. Bullard twice knocked and yelled "Sheriff's department. Search warrant." The officers heard movement inside the trailer and, within 30 seconds of the first knock and announcement, they forced entry through the door. Sgt. Bullard entered and immediately saw Weakley. Bullard ordered him to the floor and Weakley complied. Down the hall, Bullard saw Shelly Lemons. Both Weakley and Lemons were handcuffed and put in chairs in the living room. Sgt. Bullard read the search warrant to both Weakley and Lemons. He then read to them from a card their constitutional rights to remain silent and to counsel, admonishing them to "Listen up to what I am saying." Sgt. Bullard then asked each, respectively, whether he and she understood the rights. Each answered "Yes." Weakley understood his rights; he had been arrested approximately 10 times in the past, including one arrest for felony burglary.

5. At that time Sgt. Bullard explained to Weakley that the search warrant was occasioned by information that drugs were sold from Weakley's residence. He then asked them whether there was anything there. Both answered "No."

6. During the search, the officers found and seized drugs and related paraphernalia, and a .410 caliber shotgun.

7. Sgt. Bullard asked Weakley about the shotgun and Weakley said it belonged to him. Bullard asked him whether he was a convicted felon and Weakley said 'Yes." When Bullard then told Weakley that, being a felon, he could not possess a firearm, Weakley said, "I know." Bullard asked him why he had the firearm and Weakley responded that he had it for personal protection. The search took between one and one and a half

hours.  At the end of the search, Weakley and Lemons were formally placed under arrest and taken to the Sheriff's Office.

    8.  At the Sheriff's Office, during the booking process Sgt. Bullard again asked Weakley about the shotgun.  Weakley again said that it was his and that he had it for protection.

### DISCUSSION

The motion to suppress evidence should be denied.  The first issue is whether the evidence seized from the residence should be suppressed, because the issuance of the warrant violated defendant's Fourth Amendment rights.  The Fourth Amendment provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.

Under the standards established in Illinois v. Gates, 462 U.S. 213 (1983), the tasks of a judge issuing a search warrant include determinations of whether there is probable cause[1] to believe that evidence of criminal activity would be found in the place to be searched, and whether the warrant sufficiently describes the place to be searched, enabling "the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that other premises might be mistakenly searched." United States v. White, 356 F.3d 865, 868-69 (8th Cir. 2004); United States v. Nichols, 344 F.3d 793, 797 (8th Cir. 2003).  "The duty of a reviewing court is simply to ensure that the judge had a substantial basis for concluding that probable cause existed.  Illinois, 462 U.S. at 238-39. 'Courts are to interpret affidavits in a nontechnical, common-sense fashion, and the [judge's] determination of probable cause is entitled to great deference.' United States v. Arenal, 768 F.2d 263, 266 (8th Cir. 1985)." White, 356 F.3d at 869.

---

[1] Probable cause for the issuance of a search warrant exists when there are facts which justify a prudent person in believing that contraband or evidence of crime will be found at the place to be searched.  United States v. Bieri, 21 F.3d 811, 815 (8th Cir.), cert. denied, 513 U.S. 878 (1994).

In the case at bar, the affidavit of Sgt. Bullard provided Judge Thomsen with a substantial basis for finding that there was probable cause. The affidavit recited the information provided by two informants, both known to the officer and whose information was supported by being against their penile interests and by being corroborated. Such information supplies probable cause for the issuance of a search warrant. United States v. Allen, 297 F.3d 790, 794 (8th Cir. 2002).

Defendant argues that the description of the place to be searched was factually incorrect and, thus, legally insufficient. The undersigned disagrees. A search warrant's description of the place to be searched is constitutionally sufficient, if the officer "can, with reasonable effort ascertain and identify the place intended." Steele v. United States, 267 U.S. 498, 503 (1925). The slightly incorrect description in the subject warrant, i.e. that the mobile home to be searched was the first one on the right instead of the second one, was sufficiently particular, because Sgt. Bullard knew and had been at the Weakley mobile home shortly before the warrant was executed. United States v. Valentine, 984 F.2d 906, 908-09 (8th Cir. 1993).

The oral statements made by defendant Weakley should not be suppressed. Whether or not defendant was actually arrested or only detained after the officer entered the residence to execute the search warrant, before he made the statements, defendant was advised of his constitutional rights to remain silent and to counsel, in compliance with Miranda v. Arizona, 384 U.S. 436 (1966). He understood and waived his rights. North Carolina v. Butler, 441 U.S. 369, 373, 375-76 (1979). And his statements were voluntary, because they were not "extracted by threats, violence, or direct or indirect promises, such that a person's will is overborne and his or her capacity for self-determination critically impaired." United States v. Jordan, 150 F.3d 895, 898 (8th Cir.

1998) (quoting United States v. Gipp, 147 F.3d 680, 683-84 (8th Cir. 1998)).

For these reasons,

**IT IS HEREBY RECOMMENDED** that the motion of defendant to suppress evidence and statements (Doc. 24) be denied.

The parties are advised they have ten (10) days to file written objections to this Order and Recommendation. The failure to file objections may result in a waiver of the right to appeal issues of fact.

**ORDER SETTING TRIAL DATE**

**IT IS HEREBY ORDERED** that, pursuant to the Administrative Order of this Court, the case be set for trial.

/s/ David D. Noce
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on September 23, 2005.